IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

BRENDA K. BARDONER,            )
                               )
            Plaintiff,         )
                               )
vs.                            )   Case No. 04-0706-CV-W-ODS-SSA-ECF
                               )
JO ANNE B. BARNHART,           )
Commissioner of Social Security, )
                               )
            Defendant.         )

**ORDER AND OPINION AFFIRMING FINAL DECISION
OF COMMISSIONER OF SOCIAL SECURITY**

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income benefits. For the following reasons, the Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff Brenda K. Bardoner filed her application for disability insurance benefits and supplemental security income benefits on November 30, 2000, alleging that she has been disabled since October 25, 2000. Plaintiff's claims were denied. After a hearing was held, the Administrative Law Judge ("ALJ") issued a decision on June 14, 2003, finding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review of the ALJ's decision on June 25, 2004. Thus, the decision of the ALJ remains the final decision of the Commissioner relevant to this appeal.

*A. Administrative Hearing*

In the hearing held before the ALJ, Plaintiff testified that she was born in 1964 and has received her GED. Tr. 27, 30. She stands 5'8" and weighs more than 300 pounds. Tr. 28. She is single, has no children, and lives with her brother and his

girlfriend. Tr. 29, 30-32, 50. At the time of the hearing, she was attending junior college two days a week for approximately five or six hours per day and studied between twelve and fifteen hours per week. She was in her third semester maintained a grade point average of 2.25. Tr. 30. Because of her health, Plaintiff missed or one or two days a month of school. Tr. 57. She testified that she considers herself a slow learner and has received tutoring in the past. Tr. 61, 62.

Plaintiff has been a diabetic since 1996. Tr. 38. Because her blood sugar is difficult to control, she checks it eight times a day. Tr. 38-39. She has complained of numbness in her feet and legs. She testified that she can only sit for thirty minutes at a time and then has to stand for about ten minutes to get feeling back in her feet. Tr. 35, 43. She stated that she can walk about forty or fifty feet and then becomes short of breath, but she does not take any medication to aid her breathing. Tr. 40. An ulcer on her left great toe also causes her pain and problems with walking, but she wears orthopedic shoes to help it. Tr. 38. She also stated that she suffers from bouts of depression and describes herself as "very suicidal." Tr. 42. She has undergone no counseling for her depression because psychiatrists terrify her. Tr. 48. In 2000, Plaintiff underwent a triple bypass surgery. Tr. 46. At the time of the hearing, she was taking also medication for high blood pressure and cholesterol. Tr. 44-45. Plaintiff testified that she does laundry, cooks and loads and empties the dishwasher. She also likes to sing karaoke once or twice a month. Tr. 51-52.

Medical Expert Morris Alex, M.D., testified at the hearing. Based on Plaintiff's medical records, Dr. Alex concluded that Plaintiff did not meet or equal any of the listings of impairments. Tr. 66-67. He also stated that the medical records did not speak to mental health problems or concentration deficits. Tr. 67-68. He found that Plaintiff suffers from very mild sensory perception and is massively obese. Tr. 68-69. He concluded that Plaintiff's sitting ability was unlimited but her ability to walk was limited, she should not lift more than ten pounds, she should seldom bend and only occasionally climb stairs. Tr. 70-71. He opined that there was no limit with regard to her gripping, but she should not climb ladders or work around hazardous machinery. Tr. 71.

2

Vocational Expert (VE) Janice Hastert testified Plaintiff's past relevant work included certified nurse's assistant, inserter, residential aide, and supervisor of a handicapped workshop. Tr. 76. The ALJ posed a hypothetical question asking whether an individual the same age, education level and work experience as Plaintiff could perform any work if that person could only stand a total of two hours in a given day at ten to fifteen minute intervals; had no limitation with regard to sitting but would be given the opportunity to stand when needed; was subject to shortness of breath upon overexertion; had mild decreased sensation in all four extremities but no grip limitation; had no limitations with regard to memory, concentration or focus; could only lift ten pounds or less; could only seldom climb stairs or bend; and must avoid hazardous machinery and equipment, working around unprotected heights and climbing ladders and scaffolding. Tr. 77-79. The VE responded that the individual could not perform any of Plaintiff's past relevant jobs but could perform a full range of sedentary work, including positions such as a security monitor, telephone solicitor and sedentary cashier. Tr. 79.

The ALJ posed a second hypothetical question asking whether the same individual could work if she suffered from anxiety or depression and had significant problems focusing, which affected her at least one-third of most days. The VE responded that such an individual could not work. Tr. 80. Plaintiff's counsel asked the VE whether Plaintiff's grade point average, if hypothetically lower, would prevent employment. The VE stated that the job functions involved in the identified positions would require an even lower capacity than that established by Plaintiff's grade point average and would not even require a GED. Tr. 80.

*B. Medical Records*

Beginning in 2000 and continuing through 2002, Plaintiff was seen at Golden Valley Memorial Hospital[1] on numerous occasions and was admitted at least five

---

[1]Unless otherwise noted, Plaintiff's treatment occurred at Golden Valley Memorial Hospital.

3

different times. On May 16, 2000, Plaintiff was seen at the hospital for complaints about an ulcer on her left great toe. Tr. 350-52. On June 23, 2000, Plaintiff complained of vomiting, weakness, abdominal discomfort and progressively high blood sugar. She was admitted to the hospital for four days and later diagnosed with diabetic ketoacidosis[2] and a diabetic foot ulcer. Tr. 221-44. During July and August 2000, Plaintiff was seen by Donald Spadone, M.D., at the University of Missouri Health Sciences Center for treatment of the foot ulcer. He prescribed orthotic shoes. Tr. 265-71.

On July 16, 2000, Plaintiff was admitted to the hospital again for blood sugar over 600, light-headedness, dizzy spells, chest pain and confusion. Plaintiff's chest x-ray was normal. It was reported that "patient is borderline compliant with diabetic care." She was diagnosed again with diabetic ketoacidosis. Tr. 247-50. On September 10, 2000, Plaintiff was admitted to the hospital for two days for elevated blood glucose and chest pain. Upon discharge, she was told she could report back to work within a week. Tr. 276-78.

On October 26, 2000, Plaintiff was transferred from Golden Valley Memorial Hospital to St. Luke's hospital, where she underwent a triple bypass and was discharged on November 4, 2000, after an uneventful recovery. Tr. 299-304. Two weeks later, Plaintiff reported to Golden Valley Memorial Hospital complaining that the incision from her bypass surgery had started bleeding. She was treated and released. Tr. 317. On November 21, 2000, she told her treating physician, Kevin R. Van Valkenburg, D.O., about a possible infection in her left thigh. Tr. 424. Plaintiff was admitted to the hospital, treated and discharged on December 2, 2000. Tr. 353-78.

On January 16, 2001, Plaintiff was treated by Dr. Van Valkenburg for complaints of left ankle and foot swelling that began a week earlier. Tr. 419. On February 5, 2001, Plaintiff went to the hospital with complaints of pain in her right side and breathing difficulty. She was told to take Tylenol for the pain and use a heating pad. Tr. 437-43.

---

[2] A state of absolute or relative insulin deficiency. STEADMAN'S MEDICAL DICTIONARY 489-91, 947 (27th ed. 2000).

4

From February 16 until February 28, 2001, Plaintiff was treated for complaints of nausea, vomiting, and increased blood sugar. She was diagnosed with hyperglycemia[3] with poorly controlled diabetes and dehydration. Tr. 381-415, It was noted that there was "poor home management with poor compliance issues." Tr. 385. During her hospital follow-up visit with Dr. Van Valkenburg on March 20, 2001, he noted that Plaintiff was feeling well and had become more active. Her glucose levels demonstrated much improved control. Tr. 417. On April 17, 2001, Plaintiff saw Dr. Van Valkenburg again for problems controlling her blood sugar. He discussed her blood sugar variations in relation to exercise and rest and noted that Plaintiff's blood sugar readings indicated that she had better control on the days that she exercised. He also noted left shoulder pain with impingement syndrome and prescribed Celebrex. Tr. 492.

Plaintiff returned to the hospital on April 18, 2001, and was admitted for problems controlling her blood sugar. She was diagnosed with acute cellulitis[4] and lymphangitis[5] of her left lower extremity. She was instructed to maintain a 1,800-calorie diet. Tr. 444-56. She had her follow-up visit with Dr. Van Valkenburg on May 2, 2001. He found Plaintiff's blood sugar poorly controlled but opined that it was likely due to steroids that the hospital had prescribed. Tr. 491. When she returned to Dr. Van Valkenburg in June 2001, her blood sugar evinced a consistent pattern - controlled in the early morning and high in the afternoon and late morning. Tr. 487. In August 2001, Dr. Van Valkenburg noted that Plaintiff's blood sugars were under better control. Tr. 485.

In October 2001, Plaintiff began seeing Drew A. Smith, M.D., who diagnosed her with Type II Diabetes that was erratic and uncontrolled. Tr. 477. On January 24, 2002, Plaintiff was treated at the hospital for nausea and headache. Tr. 457-63. She was treated again on September 8, 2002, for lower abdominal pain, vomiting and weakness.

---

[3]"An abnormally high concentration of glucose in the circulating blood, seen especially in patients with diabetes mellitus." STEADMAN'S at 849.

[4] "Inflammation of subcutaneous, loose connective tissue (formerly called cellular tissue." STEADMAN'S at 317 (parenthetical in original).

[5] "Inflammation of the lymphatic vessels." STEADMAN'S at 1039.

5

Tr. 464-469.

During 2002 and 2003, Plaintiff was treated at Bothwell Regional Health Center for the diabetic wound on her left great toe. She went through at least nineteen treatments without complete healing of the ulcer. Tr. 497-511, 579-83. It was noted that Plaintiff was "very faithful in making her visits." Tr. 499. During this same time, Plaintiff was observed on numerous occasions at the Wound Care Clinic and Diabetes Clinic at Truman Medical Center. Tr. 514-54. On one occasion, it was noted that Plaintiff suffered from depression and was prescribed Celexa. Tr. 518.

On March 18, 2003, Plaintiff was examined by John Wy, M.D. Tr. 569-71. Dr. Wy noted that Plaintiff had difficulty getting up and sitting down because of her obesity; otherwise, the examination was normal. He diagnosed her with coronary artery disease, Type II Diabetes (uncontrolled with peripheral sensory neuropathy) and a non-healing ulcer on the foot, morbid obesity, reduced thyroid function, high cholesterol, depression and anxiety. He suspected obstructive sleep apnea. Tr. 571.

As part of a vocational evaluation report, Plaintiff was administered an intelligence quotient test in June 2001, which revealed scores that were in the normal range of intelligence. The examiner noted that the IQ score indicated that Plaintiff was probably a person with good academic achievement, possible depressive condition and/or tension or anxiety state. Tr. 558.

A physical residual functional capacity assessment was completed by a physician with the Disability Determinations Section on April 11, 2001. Tr. 429-436. The reviewing physician set forth the following restrictions: Plaintiff can occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. Tr. 430. She does not have any postural, manipulative, communicative or visual limitations and her ability to push and/or pull is unlimited. Tr. 430-33. She must avoid concentrated exposure to extreme cold and heat. Tr. 433.

***C. ALJ's Decision***

After the hearing, the ALJ determined that Plaintiff had medically determinable severe impairments but she did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. The ALJ found that Plaintiff suffered from insulin dependent diabetes with peripheral neuropathy; ischemic[6] heart disease, status post three vessel bypass procedure; essential hypertension; and weight disproportionate to height. Tr. 18. The ALJ found that Plaintiff's testimony concerning her impairments and symptoms were no more than partially credible inasmuch as her testimony was inconsistent with the objective medical evidence; the opinions of treating, examining and reviewing physicians and the medical expert; outpatient treating records; and a possible history of noncompliance with her treatment regime. Tr. 21.

The ALJ determined that Plaintiff had the residual functional capacity for a limited range of sedentary work where she has no limitation in her ability sit, can stand for no more than two hours, is limited by weight in terms of her ability to walk, can lift ten pounds, can seldom bend, has no limitation on her ability to grip and should avoid hazardous machinery and climbing. Tr. 21. Based on her residual functional capacity, age, work experience and education, the ALJ concluded that Plaintiff was not disabled. The ALJ determined Plaintiff could not return to her past relevant work but could perform work as a security monitor, telephone solicitor or sedentary cashier. Tr. 20, 22.

## II. DISCUSSION

Plaintiff appeals the decision of the Commissioner of the Social Security Administration claiming (1) the ALJ improperly concluded that Plaintiff did not meet a listed impairment; (2) the ALJ improperly assessed Plaintiff's credibility; and (3) the ALJ did not properly determine Plaintiff's residual functional capacity.

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial

---

[6] "Local anemia due to mechanical obstruction (mainly arterial narrowing or disruption) of the blood supply." STEDMAN'S at 924.

evidence is evidence which reasonable minds would accept as adequate to support the Secretarys conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

### *A. Listed Impairments*

Plaintiff contends that the ALJ improperly concluded that her impairments did not meet the requirements for listed impairment 9.08, which reads as follows:

> 9.08 *Diabetes Mellitus*. With:
> A.    Neuropathy demonstrated by significant and persistent disorganizations of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C); or
> B.    Acidosis occurring at least on the average of once every 2 months documented by appropriate blood chemical tests (pH or $PCO_2$ or bicarbonate levels); or
> C.    Retinitis proliferans; evaluate the visual impairment under criteria in 2.02, 2.03, or 2.04.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §9.08 (2002). For a plaintiff to show that her impairment matches a listing, the impairment must meet all specified medical criteria. See Deckard v. Apfel, 213 F.3d 996, 997 (8th Cir. 2000) (citation omitted).

At the hearing, the ALJ specifically questioned Dr. Alex as to whether Plaintiff met or equaled one of the listed impairments. Dr. Alex found that she did not. Tr. 66-67. Contrary to Plaintiff's contention that Dr. Alex did not make his conclusion based on all the medical records, Dr. Alex stated at the hearing that he had reviewed and considered all her medical records when arriving at his findings. Tr. 66, 72-73. While the record does establish that Plaintiff has been diagnosed with neuropathy and has

8

been hospitalized on handful of occasions for neuropathy or poorly controlled diabetes over the period of at least three years, the record does not establish that Plaintiff's impairment meets the severity level required by the listing. The ALJ properly determined that Plaintiff did not meet the criteria listed impairment 9.08.

### B. *Plaintiff's Credibility*

Under the statutory definition of disability, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must be "of such severity that he is not only able to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work." 42 U.S.C. § 423(d)(2)(A). The ALJ specifically found that Plaintiff suffered from insulin dependent diabetes with peripheral neuropathy; ischemic heart disease, status post three vessel bypass procedure; essential hypertension; and weight disproportion; however, the ALJ did not find that Plaintiff suffered from any impairment that classified her as disabled.

The critical issue is not whether Plaintiff experiences pain, but rather the degree of pain that he experiences. The familiar standard for analyzing a claimant's subjective complaints is set forth in Polaski v. Heckler:

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
> The absence of an objective medical bias which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;

9

    2. the duration, frequency and intensity of the pain;
    3. precipitating and aggravating factors;
    4. dosage, effectiveness and side effects of medication
    5. functional restrictions.

> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d at 1322 (subsequent history and internal citations omitted). Although a claimant's subjective complaints cannot be disregarded solely because they are not fully supported by objective medical evidence, they may be discounted if there are inconsistencies in the record as a whole. See Wilson v. Chater, 76 F.3d 238, 241 (8th Cir. 1996).

    The ALJ found Plaintiff's testimony concerning her impairments were only partially credible because it was inconsistent with the objective medical evidence; the opinions of treating, examining and reviewing physicians; and a possible history of noncompliance with her treatment regime. Tr. 21. Plaintiff argues that she was compliant with her treatment; her blood sugar is erratic and difficult to control. The record does establish that Plaintiff's blood sugar was difficult to control (Tr. 381-415, 477, 571); however, the record also establishes that Plaintiff was not always compliant with her treatment. Tr. 247-50, 385, 487. Thus, the ALJ properly considered Plaintiff's failure to comply with her treatment when evaluating her credibility.

    Plaintiff also claims that the ALJ placed undue weight on her college attendance in assessing Plaintiff's credibility. It is proper for an ALJ to consider a claimant's part-time college attendance. See Tennant v. Apfel, 224 G.3d 869, 871 (8th Cir. 2000). Plaintiff was in class ten to twelve hours per week, studied at least twelve hours per week and maintained more than a "C" average grade point average without any problems. Tr. 30-33. Plaintiff's ability to sit in a classroom for multiple hours and study for several hours a week indicate that Plaintiff's impairments and symptoms are not so severe as to prevent her from attending school. The ALJ properly considered Plaintiff's college attendance when assessing her credibility.

10

In addition, Plaintiff points out that the ALJ commented in his decision that the medical records indicate Plaintiff failed to follow physicians' instructions to exercise and lose weight and that fact is not in any exhibit. While the ALJ did note this (Tr. 19) and it is not located within the portion of the record to which he cites, he did not take this into account when assessing her credibility.

### *C. Residual Functional Capacity*

Plaintiff contends that the ALJ failed to properly determine Plaintiff's residual functional capacity ("RFC"). The ALJ must formulate Plaintiff's RFC based on all the relevant, credible evidence of the record. McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000). Plaintiff argues that the ALJ did not properly consider her learning limitations when determining her RFC. Contrary to Plaintiff's argument, the record establishes that Plaintiff has average intelligence. In addition, individuals with much lower IQ scores have been found not disabled. See Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997). The ALJ properly determined Plaintiff's RFC with regard to her mental functioning since the record did not establish any mental limitations.

Plaintiff also alleges that the ALJ failed to properly consider Plaintiff's obesity. The question the ALJ posed to the medical expert specifically asked him to consider an individual who was the same height and weight as Plaintiff. Tr. 69. Dr. Alex responded that the individual would be considered massively obese, and that would probably account for complaints of shortness of breath. Tr. 69. In addition, Dr. Alex opined that Plaintiff's weight would limit her ability to walk. Tr. 70. The ALJ also concluded that one of Plaintiff's impairments was weight disproportionate to her height and, in formulating a residual functional capacity, he stated that her weight would limit her ability to walk. Tr. 21. Based on the record, it is clear that the ALJ properly considered Plaintiff's obesity.

Finally, Plaintiff claims that the ALJ did not properly consider the limitations caused by numbness in Plaintiff's extremities. The record did not establish that Plaintiff was limited by the numbness in her extremities other than what she testified about during the hearing. Tr. 35, 37, 40, 43, 52. Based on Plaintiff's own testimony, she does not have limitations beyond what is explained in the RFC formulated by the ALJ.

11

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion is denied, and the Commissioner's final decision denying benefits is affirmed.

IT IS SO ORDERED.

Date: April 20, 2005                            /s/  Ortrie D. Smith
                                                ORTRIE D. SMITH, JUDGE
                                                UNITED STATES DISTRICT COURT